Antonio **ROMERO** and Claudia Romero, **Plaintiffs,**

v.

Aerolineas **ARGENTINAS, Defendant.**

**Civ. A. No. 93–3041 (AJL).**

United States District Court,
D. New Jersey.

Sept. 27, 1993.

Raquel Romero, Elizabeth, NJ, for plaintiffs.

Michael J. Holland, Condon & Forsyth, New York City, John R. Altieri, Hackensack, NJ, for defendant.

## OPINION

LECHNER, District Judge.

This is an action by plaintiffs Antonio Romero and Claudia Romero (collectively the "Plaintiffs") to recover for injuries sustained in international air travel aboard an aircraft owned and operated by defendant Aerolineas Argentinas ("Aerolineas"). Jurisdiction is alleged pursuant to the Convention for the Unification of Certain Rules Relating to International Transportation by Air (the "Warsaw Convention"), 29 October 1934, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted at* note to 49 U.S.C. § 1502, and 28 U.S.C. §§ 1331 and 1337.

Currently before the court is the issue of whether this case should be transferred to the United States District Court for the Southern District of New York. For the reasons set forth below, this matter is transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1631.[1]

*Procedural History*

The Plaintiffs filed a complaint on 16 July 1993 (the "Complaint"). The Complaint sought recovery against Aerolineas under the Warsaw Convention and the Federal Aviation Program, 49 U.S.C.App. § 1301 *et seq.* Complaint at 1, 3.

---

1. In response to this issue, the Plaintiffs submitted: Plaintiff's Memorandum of Law, dated 30 July 1993 (the "Plaintiffs' Brief"); Certification of Raquel Romero, dated 30 July 1993 (the "R. Romero Cert."); Affidavit of Antonio Romero and Claudia Romero, dated 25 August 1993 (the "Romero Aff.").

Aerolineas submitted: Defendant Aerolineas Argentinas' Memorandum of Points and Authorities, dated 5 August 1993 (the "Aerolineas Brief"), including as Exhibit A, Photocopy of Airline Ticket Issued by Aerolineas to Antonio Romero, dated 7 November 1991 (the "A. Romero Ticket") and Photocopy of Airline Ticket Issued by Aerolineas to Claudia Romero, dated 7 November 1991 (the "C. Romero Ticket"); Affidavit of Juan Oroza, dated 23 August 1993 (the "Oroza Aff."), including as Exhibit A, the A. Romero Ticket and the C. Romero Ticket, and including as Exhibit B, A Universal Credit Charge Form Issued by Monica's Travel, Newark, New Jersey, to Claudia Romero, dated 4 November 1991 (the "Charge Form").

On 23 July 1993, because of the allegations in the Complaint, the court issued the Order to Show Cause (the "Order to Show Cause"), directing the Plaintiffs to show cause "why this matter should not be transferred to the United States District Court for the Southern District of New York." Order to Show Cause at 2–3. The Order to Show Cause raised the issues of personal jurisdiction over Aerolineas and the appropriateness of venue. *Id.* at 2.

On 5 August 1993, the Plaintiffs filed an amended complaint (the "Amended Complaint"). The Amended Complaint contained substantially the same factual allegations as did the Complaint, but sought recovery only under the Warsaw Convention. Amended Complaint at 1, 3.

*Facts*

Plaintiffs are and were at all relevant times domiciled in the Township of Belleville, New Jersey. Romero Aff., ¶ 2.

Aerolineas is a corporation engaged in international air transportation under a permit issued by the United States Civil Aeronautics Board. Amended Complaint at 2; Aerolineas Brief at 3. Aerolineas states it is a "foreign corporation organized and existing under the laws of the Argentine Republic with its domicile and principal place of business in Buenos Aires, Argentina." Aerolineas Brief at 3. Aerolineas states it "transacts business within the State of New York." *Id.* The North American headquarters of Aerolineas is located in New York County, New York. Oroza Aff., ¶ 1. Aerolineas "does not operate and has never operated any flights from New Jersey." *Id.*, ¶ 6.

Plaintiffs allege Aerolineas is a "corporation duly organized and existing under the law of the State of New York, with its principal office and place of business located at New York, New York." Amended Complaint at 2.

On 4 November 1991, Claudia Romero visited a travel agent, known as Monica's Travel, located in Newark, New Jersey. Oroza Aff., ¶ 4; Romero Aff., ¶ 2; Charge Form. Claudia Romero requested two round-trip tickets for transportation to and from Buenos Aires, Argentina aboard a flight operated by Aerolineas. Oroza Aff., ¶ 4; Romero Aff., ¶ 2; R. Romero Cert., ¶ 5. Claudia Romero paid for the requested tickets by Visa credit card. The Charge Form evidencing this transaction was completed and issued by Monica's Travel. Charge Form.

Monica's Travel did not have Aerolineas "ticket stock," the paper upon which tickets issued by Aerolineas are to be printed. Oroza Aff., ¶ 4. Consequently, the Charge Form was sent by Monica's Travel to the Aerolineas ticket office in New York County, New York (the "Aerolineas Ticket Office"). *Id.*

On 7 November 1991, the Aerolineas Ticket Office issued to the Plaintiffs two round trip tickets (the "Tickets") for travel from John F. Kennedy International Airport in Queens County, New York ("JFK") to Buenos Aires, Argentina on 25 December 1991 and from Buenos Aires to JFK on 1 February 1992. Oroza Aff., ¶¶ 3–4; A. Romero Ticket; C. Romero Ticket. The Tickets were then sent by the Aerolineas Ticket Office to Monica's Travel for delivery to the Plaintiffs. Oroza Aff., ¶ 4.

The Amended Complaint alleges that on 1 February 1992, the Plaintiffs boarded Aerolineas flight number 336 ("Flight 336") from Buenos Aires, Argentina to JFK at Ezeiza Airport ("Ezeiza") in Buenos Aires. Amended Complaint at 2, 3. Plaintiffs allege that while Flight 336 was still on the ground at Ezeiza, an emergency arose, requiring the "immediate evacuation of all passengers." *Id.* at 3. Plaintiffs allege that as a result of this evacuation, they were injured. *Id.*

*Discussion*

The parties are in agreement that the Warsaw Convention governs the Plaintiffs' claims against Aerolineas. Amended Complaint at 1; Plaintiffs' Brief at 3; Aerolineas Brief at 6.

The parties, however, disagree as to the effect of the Warsaw Convention on the issues of personal jurisdiction and venue in this case. Plaintiffs contend personal jurisdiction and venue are proper in the District of New Jersey pursuant to Article 28(1) of the Warsaw Convention, 49 U.S.C. § 1502, art. 28(1). Plaintiffs' Brief at 3–4. Aerolineas contends the Warsaw Convention does

not speak to issues of personal jurisdiction and venue, and that personal jurisdiction and venue are improper in the District of New Jersey under applicable domestic law. Aerolineas Brief at 8–10.

## A. *The Warsaw Convention*

■ The Warsaw Convention is an international treaty governing the liability of air carriers for injuries relating to international travel. 49 U.S.C. § 1502, art. 1. Duly ratified by Congress, the provisions of the Warsaw Convention are the supreme law of the land. *See* U.S. Const. Art. VI, cl. 2. As such, the Warsaw Convention supersedes conflicting prior federal legislation, and pre-empts any conflicting state laws. *See In re Korean Airlines Disaster of Sept. 1, 1983,* 798 F.Supp. 750, 753 (D.D.C.1992) (Warsaw Convention supersedes conflicting provisions of Death on the High Seas Act, 46 U.S.C.App. § 761 *et seq.*); *In re Air Disaster Near Honolulu, Hawaii,* 792 F.Supp. 1541, 1548 (N.D.Cal.1990) (Warsaw Convention pre-empts conflicting local laws).

■ The Warsaw Convention is intended to achieve uniformity in the area of air carrier liability. *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 551, 111 S.Ct. 1489, 1502, 113 L.Ed.2d 569 (1991); *Evangelinos v. Trans World Airlines, Inc.,* 550 F.2d 152, 155 (3d Cir.1977). Although it does not preclude pleading in the alternative, the Warsaw Convention is the exclusive remedy against air carriers when it applies. *Onyeanusi v. Pan American Airways, Inc.,* 952 F.2d 788, 793 (3d Cir.1992); *Abramson v. Japan Airlines Co.,* 739 F.2d 130, 134 (3d Cir.1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985).

### *Article 28(1)*

■ Article 28(1) of the Warsaw Convention provides:

An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties,[2] either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

49 U.S.C. § 1502, Art. 28(1).

■ The forum provisions of Article 28(1) are national in scope. That is, they determine the nation in which a suit under the Warsaw Convention can be brought, and not the place within that nation in which jurisdiction and venue are appropriate. *See Smith v. Canadian Pacific Airways, Ltd.,* 452 F.2d 798, 801 (2d Cir.1971) ("The view that Article 28(1) speaks only on the national plane has . . . become the predominant view in the case law and in the commentaries."); *In re Air Disaster Near Cove Neck, New York,* 774 F.Supp. 725, 726 (E.D.N.Y.1991) ("This Article is jurisdictional in nature and the points of jurisdiction it specifies are national in scope."); *Hill v. United Airlines,* 550 F.Supp. 1048, 1053 (D.Kan.1982) ("Article 28(1) is not in any way concerned with the territorial subdivisions of the United States."); *Pitman v. Pan American World Airways, Inc.,* 223 F.Supp. 887, 889 (E.D.Pa. 1963) ("Article 28 refers to national entities and not to geographical places within the nation.").

■ Therefore, Article 28(1) can only confer subject matter jurisdiction over a matter upon the courts of the United States as a whole. *See Gayda v. LOT Polish Airlines,* 702 F.2d 424, 425 (2d Cir.1983) ("Because Article 28 speaks to subject matter jurisdiction, it operates as an absolute bar to federal jurisdiction in cases falling outside its terms."); *In re Air Disaster Near Cove Neck,* 774 F.Supp. at 726 ("If, in any given action, the United States is not one of the fora specified by Article 28, the federal courts lack treaty jurisdiction under the convention and therefore federal subject matter jurisdiction over the controversy."); *Jamil v. Kuwait Airways Corp.,* 773 F.Supp. 482, 484 (D.D.C.1991) (Article 28(1) determines "whether this court has jurisdiction over the subject matter of plaintiff's claim."); *Boyar*

---

2. The term "High Contracting Party" is not defined in the Warsaw Convention. However, it appears this term was intended to denote a nation that is a party to the Warsaw Convention. *See* 49 U.S.C. § 1502, art. 1(2).

*v. Korean Air Lines,* 664 F.Supp. 1481, 1486 (D.D.C.1987) (same).

Article 28(1) does not determine the existence of personal jurisdiction or the appropriateness of venue in any particular Federal court. *See Hill,* 550 F.Supp. at 1054 ("[W]e hold that the Warsaw Convention does not effect the court's jurisdiction or venue beyond affirming that this suit may properly be heard by a court located within the territorial limits of the United States."); *Fabiano Shoe Co. v. Alitalia Airlines,* 380 F.Supp. 1400, 1403 (D.Mass.1974) ("Article 28 does not confer jurisdiction upon any particular court in the United States. That is to say, the Convention does not confer jurisdiction in the domestic law sense but only jurisdiction in the international law sense.").

Once the courts of the United States are determined to have subject matter jurisdiction over a matter under Article 28(1), issues of personal jurisdiction and venue are determined by domestic laws. *See Campbell v. Air Jamaica, Ltd.,* 863 F.2d 1, 1 (2d Cir. 1988) ("Compliance with Article 28(1) gives a nation treaty jurisdiction over the claim, so that the nation is an appropriate site for litigation, although domestic jurisdiction and venue questions still may require further analysis."); *Mertens v. Flying Tiger Line, Inc.,* 341 F.2d 851, 855 (2d Cir.) ("Plaintiff's choice of forum within [the] country is governed by internal law, with all its intricacies and complexities, not by the Warsaw Convention."), *cert. denied,* 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965); *In re Air Crash Disaster at Gander, Newfoundland,* 660 F.Supp. 1202, 1217 (W.D.Ky.1987) ("Which court within a High Contracting Party should hear a case arising under the [Warsaw] Convention is purely a matter of the High Contracting Party's internal law of venue and jurisdiction."); *Butz v. British Airways,* 421 F.Supp. 127, 129 (E.D.Pa.1976) ("Jurisdiction in an international sense must be established in accordance with Article 28(1) of the Warsaw Convention, and then jurisdiction of a particular court must be established pursuant to applicable domestic law."), *aff'd,* 566 F.2d 1168 (3d Cir.1977). Accordingly, a court's personal jurisdiction in cases under the Warsaw Convention is determined by the Federal personal jurisdiction rule, Fed. R.Civ.P. 4(e).

B. *Personal Jurisdiction Under Fed. R.Civ.P. 4(e)*

■ Rule 4(e) provides that a Federal court has jurisdiction over a non-resident defendant to the extent authorized by the law of the state in which that court sits. Fed. R.Civ.P. 4(e); *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689 (3d Cir.), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990); *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir.1987); *American Tel. & Tel. Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1301 (D.N.J.1990) (hereinafter "*AT & T*").

Pursuant to 28 U.S.C. § 1631, where "the court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer [the] action ... to any other such court in which the action ... could have been brought...." 28 U.S.C. § 1631. The Third Circuit has elaborated that "a district court lacking personal jurisdiction can transfer a case to a district in which the case could have been brought originally." *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 544 (3d Cir.1985); *see Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 164–65 (3d Cir.1980), *rev'd on other grounds,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1982); *United States v. Berkowitz,* 328 F.2d 358, 361 (3d Cir.), *cert. denied,* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964); *Cunningham v. Walt Disney World Co.,* No. 90–6164, 1991 WL 22062 at *4 (E.D.Pa. 19 Feb. 1991).

C. *Personal Jurisdiction Over Aerolineas in New Jersey*

■ The New Jersey Long Arm Rule permits the exercise of *in personam* jurisdiction as far as is constitutionally permissible under the Due Process Clause of the Fourteenth Amendment. N.J.Ct.R. 4:4–4; *Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 145 (3d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *Apollo*

*Technologies Corp. v. Centrosphere Industrial Corp.,* 805 F.Supp. 1157, 1181 (D.N.J. 1992); *Charles Gendler & Co. v. Telecom Equip. Corp.,* 102 N.J. 460, 469, 508 A.2d 1127 (1986) (citing *Avdel Corp. v. Mercure,* 58 N.J. 264, 268, 277 A.2d 207 (1971)).

■ Federal courts sitting in New Jersey apply New Jersey law when interpreting the meaning of due process for the purpose of determining *in personam* jurisdiction. *AT & T,* 736 F.Supp. at 1301; *Eason v. Linden Avionics, Inc.,* 706 F.Supp. 311, 319 (D.N.J. 1989); *Western Union Telegraph v. T.S.I., Ltd.,* 545 F.Supp. 329, 332 (D.N.J.1982).

■ Under the Fourteenth Amendment, personal jurisdiction exists where the plaintiff demonstrates the defendant has sufficient "minimum contacts" with the forum state:

> The first step in a minimum contacts analysis ... is to determine whether the defendant has sufficient contacts with the forum state. The second step is to evaluate those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"

*Charles Gendler & Co.,* 102 N.J. at 472, 508 A.2d 1127 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)); *see also Lebel v. Everglades Marina, Inc.,* 115 N.J. 317, 322, 558 A.2d 1252 (1989); *Ruetgers–Nease Chem. Co. v. Firemen's Ins. of Newark,* 236 N.J.Super. 473, 477, 566 A.2d 227 (App.Div. 1989). The courts of New Jersey have exercised *in personam* jurisdiction "wherever possible with a liberal and indulgent view if the facts reasonably support the presence of the flexible concepts of 'fair play and substantial justice.'" *Ketcham v. Charles R. Lister Int'l, Inc.,* 167 N.J.Super. 5, 7, 400 A.2d 487 (App.Div.1979); *J.I. Kislak, Inc. v. Trumbull Shopping Park, Inc.,* 150 N.J.Super. 96, 98, 374 A.2d 1246 (App.Div.1977).

The plaintiff bears the burden of demonstrating that the defendant's contacts with New Jersey are sufficient to give the court *in personam* jurisdiction. *Carteret,* 954 F.2d at 146; *North Penn Gas,* 897 F.2d at 690; *Gehling,* 773 F.2d at 542; *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 362 (3d Cir. 1983). "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" *North Penn Gas,* 897 F.2d at 689 (quoting *Stranahan Gear Co. v. NL Indust.,* 800 F.2d 53, 58 (3d Cir.1986)).

■ The plaintiff must demonstrate that either specific or general jurisdiction exists over the defendant. *Provident Nat'l Bank,* 819 F.2d at 437; *Apollo,* 805 F.Supp. at 1182; *Giangola v. Walt Disney World Co.,* 753 F.Supp. 148, 154 (D.N.J.1990). For purposes of establishing either specific or general jurisdiction, minimum contacts with a state are shaped by purposeful conduct making it reasonable for the defendant to anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 *reh'g denied,* 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958); *North Penn Gas,* 897 F.2d at 690; *Lebel,* 115 N.J. at 323, 558 A.2d 1252. These contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240; *accord Lebel,* 115 N.J. at 323–24, 558 A.2d 1252. The absence of a "physical presence" in the state is not determinative for jurisdictional purposes. *Burnham v. Superior Court,* 495 U.S. 604, 618, 110 S.Ct. 2105, 2114, 109 L.Ed.2d 631 (1990) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184; *Charles Gendler,* 102 N.J. at 469–70, 508 A.2d 1127 (same).

In measuring the sufficiency of minimum contacts for *in personam* jurisdiction, a court must focus upon the "relationship among the defendant, the forum and the litigation."[3]

---

3. In establishing specific jurisdiction, for instance, an isolated but significant act may be sufficient to subject the defendant to the jurisdiction of the forum. *Charles Gendler,* 102 N.J. at 471, 508 A.2d 1127 (citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199,

*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)); *Giangola,* 753 F.Supp. at 155. The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another person.' " *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (citations omitted); *accord Giangola,* 753 F.Supp. at 155; *AT & T,* 736 F.Supp. at 1302–03; *Lebel,* 115 N.J. at 323, 558 A.2d 1252.

Supreme Court in *Burger King* indicated when jurisdiction based upon "purposeful availment" is proper:

> Jurisdiction is proper … where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation on that forum as well.

*Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84 (citations omitted) (emphasis in original); *accord North Penn Gas,* 897 F.2d at 690; *see also Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239 (by exercising privilege of conducting activities within forum state, defendant is put on "clear notice" that it is subject to suit there); *Eason,* 706 F.Supp. at 320 (fairness of exercising jurisdiction results from reciprocal relationship between defendant and forum state).

Plaintiffs have apparently misconstrued the personal jurisdiction issue as being controlled by the Warsaw Convention. Plaintiffs' Brief at 3–4. As such, they have not asserted that the court has either specific or general jurisdiction over Aerolineas. It is therefore necessary to address both potential bases of personal jurisdiction over Aerolineas.

### 1. *General Jurisdiction*

■ General jurisdiction exists where the defendant has continuous and systematic contacts with the state which are unrelated to the subject matter of the lawsuit. *Provident Nat'l Bank,* 819 F.2d at 437 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)); *see also North Penn Gas,* 897 F.2d at 690 n. 2; *Apollo,* 805 F.Supp. at 1182. General jurisdiction requires a plaintiff to show significantly more than mere minimum contacts. *Provident Nat'l Bank,* 819 F.2d at 437 ("contacts to forum must be continuous and substantial"); *see also North Penn Gas,* 897 F.2d at 690 n. 2 (same); *Gehling,* 773 F.2d at 541 (same); *Dollar Sav. Bank v. First Secur. Bank, N.A.,* 746 F.2d 208, 212 (3d Cir.1984); *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 589 (3d Cir.1982).

■ Turning to the facts at bar, Aerolineas appears to have little if any contact with the state of New Jersey. Aerolineas "does not operate and has never operated any flights from New Jersey." Oroza Aff., ¶ 6. Aerolineas states it is a foreign corporation existing under the laws of Argentina with its principal place of business in Argentina. Aerolineas Brief at 3. By Plaintiffs' own account, Aerolineas is organized under the laws of the state of New York with its principal place of business in New York. Amended Complaint at 2. The North American headquarters of Aerolineas is located in the state of New York. Oroza Aff., ¶ 1.

Plaintiffs have done little to carry their burden of showing the court's general jurisdiction over Aerolineas. The only contact they allege to exist between Aerolineas and New Jersey is Aerolineas' sale of the Tickets, which were issued in New York, to the Plain-

201, 2 L.Ed.2d 223 (1957); *see also DeJames,* 654 F.2d at 286; *Western Union,* 545 F.Supp. at 333; *Bovino v. Brumbaugh,* 221 N.J.Super. 432, 435–36, 534 A.2d 1032 (App.Div.1987); *Dave's Trash Removal v. Charm City Equip. Corp.,* 214 N.J.Super. 497, 501, 520 A.2d 415 (App.Div. 1987).

tiffs through Monica's Travel in Newark, New Jersey. Monica's Travel appears to be an independent travel agency.[4] That transaction therefore has more contact with New York, where the Tickets were issued, than with New Jersey. Oroza Aff., ¶¶ 3–4.

Plaintiffs do not even allege that Aerolineas made other sales to New Jersey residents, either directly, through Monica's Travel or through other travel agents. Nor do they allege that Aerolineas solicited the services of Monica's Travel. Plaintiffs indeed fail to allege that Aerolineas in any way solicited business in New Jersey.

An out-of-state carrier's sale of tickets through a travel agent located in New Jersey is, by itself, insufficient to establish general jurisdiction over the carrier in New Jersey. *See Vacca v. Walt Disney World Co.*, No. 91–4110, 1992 WL 5181 (D.N.J. 6 Jan. 1992) (Fisher, J.) (finding no general jurisdiction in spite of defendant's solicitation of services of travel agents in New Jersey and advertising in New Jersey); *Partesi v. Carnival Cruise Lines, Inc.*, No. 90–276, 1990 WL 302890 at *3 (D.N.J. 26 Nov. 1990) (Ackerman, J.) (finding no general jurisdiction though defendant solicited services of travel agents in New Jersey, sold tickets through travel agents in New Jersey and advertised extensively in media available in New Jersey); *Serbin*, 159 N.J.Super. at 91–93, 386 A.2d 1372 (no general jurisdiction over defendant notwithstanding defendant's solicitation of services of travel agents within New Jersey).

Plaintiffs do not indicate Aerolineas has or ever had any contacts with this forum beyond the single sale of tickets issued in New York and delivered through a travel agent in the forum. Under these circumstances, Plaintiffs have not shown that Aerolineas maintains, or ever maintained, such continuous and systematic contacts with New Jersey as to establish general jurisdiction in this court.

*See Provident Nat'l Bank*, 819 F.2d at 437; *Partesi*, 1990 WL 302890 at *4.

### 2. *Specific Jurisdiction*

Specific jurisdiction, also known as transactional jurisdiction, exists when "the cause of action arises from the defendant's forum-related activities." *North Penn Gas*, 897 F.2d at 690; *see also Provident Nat'l Bank*, 819 F.2d at 437; *Apollo*, 805 F.Supp. at 1182; *Giangola*, 753 F.Supp. at 154; *AT & T*, 736 F.Supp. at 1302. Generally, for a finding of specific personal jurisdiction, the court must examine "the relationship among the defendant, the forum, and the litigation." *Shaffer*, 433 U.S. at 204, 97 S.Ct. at 2580; *see also Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872.

 Specific jurisdiction requires not only that the cause of action arise from the defendant's forum-related activities, but also that those forum-related activities rise to the level of minimum contacts with the state, such that the defendant should reasonably anticipate being haled into court there. *North Penn Gas*, 897 F.2d at 690 (citing *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567); *Apollo*, 805 F.Supp. at 1182; *Giangola*, 753 F.Supp. at 154–55. Once it has been decided that minimum contacts exist, the Supreme Court has established that "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160); *see also Charles Gendler*, 102 N.J. at 472, 508 A.2d 1127. These factors include: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and ef-

---

4. Plaintiffs do allege conclusorily that the Tickets were purchased "through the defendant's agent in New Jersey." R. Romero Cert., ¶ 5. Plaintiffs, however, supply no factual support for the legal conclusion that an agency relationship existed between Aerolineas and Monica's Travel. *See Serbin v. Walt Disney World Co.*, 159 N.J.Super. 88, 91, 386 A.2d 1372 (App.Div.) (existence of agency relationship treated as legal issue; ticket's provision that travel agent was "agent" of defendant not dispositive of whether agency relationship existed as matter of law), *certif. denied*, 78 N.J. 337, 395 A.2d 206 (1978). As affidavits may not contain purely legal conclusions, Plaintiffs' allegations of an agency relationship will not be considered. Rule 27 A of the General Rules for the District of New Jersey ("Legal arguments and summations in affidavits will be disregarded by the court....").

fective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 477, 508 A.2d 1127 (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564); *see also Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987); *Charles Gendler,* 102 N.J. at 472, 508 A.2d 1127.

 As stated, the only contact the Plaintiffs allege to have existed between Aerolineas and New Jersey is the sale of the Tickets, which were issued in New York, to the Plaintiffs through Monica's Travel in New Jersey. This single transaction through a travel agent is not sufficient to establish the minimum contacts constitutionally required for the exercise of specific jurisdiction over Aerolineas. Nothing in the record indicates that Aerolineas should reasonably have anticipated being haled into court in New Jersey as a result of this transaction. *See North Penn Gas,* 897 F.2d at 690. Because the Tickets were issued in New York, and only at the request of Monica's Travel, their issuance to the Plaintiffs does not establish that Aerolineas "purposefully avail[ed] itself of the privilege of conducting activities within [New Jersey]...." *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240.

Under these facts, Aerolineas' sale of the Tickets to the Plaintiffs through Monica's Travel does not establish the minimum contacts necessary for the court to exercise specific jurisdiction over Aerolineas. This is so even though the cause of action arose during an excursion purchased through this transaction. *See Alexander v. Carnival Tours, Inc.,* No. 86–A–1951, 1986 WL 14673 at *4 (D.Colo. 11 Dec. 1986) (plaintiffs injured while on cruise; defendant cruise ship company's sale of tickets to plaintiffs through travel agent located in forum state did not establish such minimum contacts that exercise of jurisdiction would comport with due process requirements); *Dirks v. Carnival*

*Cruise Lines,* 642 F.Supp. 971, 975 (D.Kan. 1986) (plaintiff injured while on cruise; defendant cruise ship company's sale of ticket to plaintiff through travel agent in forum state, and fact that plaintiff was induced to buy tickets through advertising by defendant within forum state did not establish minimum contacts necessary for exercise of jurisdiction).

Plaintiffs have failed to carry their burden of showing that this court has either general or specific jurisdiction over Aerolineas. *See Carteret,* 954 F.2d at 146. This court therefore lacks personal jurisdiction over Aerolineas.

 It appears personal jurisdiction over Aerolineas would be appropriate in New York, where Aerolineas maintains its North American headquarters and where it "transacts business." Oroza Aff., ¶ 1; Aerolineas Brief at 3; *see Lane v. Vacation Charters, Ltd.,* 750 F.Supp. 120, 123 (S.D.N.Y.1990) (N.Y.C.P.L.R § 301 permits New York courts to exercise jurisdiction over defendant engaged in "continuous and systematic course of doing business" in New York.) (quoting *Laufer v. Ostrow,* 55 N.Y.S.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982)). Accordingly, this matter will be transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1631.[5]

### Conclusion

For the reasons set forth above, this action is transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1631.

5. Because this action is transferred for lack of personal jurisdiction pursuant to 28 U.S.C. § 1631, it is not necessary to reach Aerolineas' argument that the action should be transferred because of improper venue.