722 A.2d 991 (1998)
318 N.J. Super. 63
Luisa L. RAGONESE, Plaintiff,
v.
Gaston ROSENFELD, Traveltronics Inc., Aerolineas Argentinas, Mario Zatocki and Zamar Viajes Inc., Defendants.
Superior Court of New Jersey, Law Division, Special Civil Part, Camden County.
Decided July 20, 1998.
*992 John Wilson, Moorestown, for plaintiff.
R. Brent English, New York City, for defendant.
RAND, J.S.C.
In this case, plaintiff Luisa L. Ragonese (plaintiff) filed a complaint against several defendants, including Aerolineas Argentinas, hereinafter Aerolineas, alleging consumer fraud, unconscionable commercial practices, conversion and breach of contract.
Specifically, plaintiff alleges that on November 30, 1995, she purchased an airline ticket from defendant, Gaston Rosenfeld acting on behalf of defendant Traveltonics, Inc., a Pennsylvania corporation located in Philadelphia, Pennsylvania. The ticket was for transportation on February 25, 1996 from New York City to Argentina via defendant Aerolineas. Plaintiff contends that this ticket was to be delivered at defendant's boarding gate at John F. Kennedy International Airport in New York. However, plaintiff asserts that when she arrived at the airport no ticket could be located. Accordingly, plaintiff contends that in order to make her flight, she was forced to purchase a second ticket at a higher price than the first ticket. Therefore, plaintiff filed this suit on August 12, 1997 seeking damages from all defendants.
Subsequently, on May 12, 1998, defendant Aerolineas moved to dismiss the complaint for lack of personal jurisdiction. This motion was originally returnable on June 12, 1998. At that time, the court reserved its opinion for further information, which this court received over the following several weeks.
The sole issue before this court is whether defendant, Aerolineas has sufficient minimum contacts with the State of New Jersey for plaintiff to assert personal jurisdiction over that defendant.
Defendant, Aerolineas relies on the certification of Juan Oroza, station manager of John F. Kennedy International Airport. In his certification, Mr. Oroza states that Aerolineas is a foreign corporation existing under the laws of Argentina with its principal place of business in Buenos Aires, Argentina. In addition, Mr. Oroza certified that the Northeast U.S. Regional headquarters of Aerolineas is located in New York where it transacts business. Mr. Oroza stated that Aerolineas does not conduct business in New Jersey nor does it operate any flights to or from New Jersey. Furthermore, he asserted that Aerolineas has no employees in New Jersey and is not registered as a foreign corporation in New Jersey.
In addition, defendant relies on Romero v. Aerolineas Argentinas, 834 F.Supp. 673 (D.N.J.1993). In Romero, plaintiff brought suit against defendant Airlines (the same defendant as in this case) to recover for injuries sustained in international air travel aboard Aerolineas Argentinas. In that case, on April 4, 1991, plaintiff visited a travel agency in Newark, New Jersey in order to purchase two round trip tickets to and from Buenos Aires, Argentina aboard Aerolineas Argentinas. The travel agency did not have Aerolineas *993 Argentinas tickets available; thus the charge form was sent to the Aerolineas ticket office in New York County, New York. On November 17, 1991, the Aerolineas ticket office issued plaintiff two tickets. Plaintiffs argued that while their flight was still on the ground, an emergency arose, requiring the evacuation of all passengers. Plaintiffs contended that they were injured during the evacuation.
In determining whether the plaintiff in Romero could assert personal jurisdiction over the defendant, the federal court examined the facts relevant to the minimum contacts analysis. The court stated:
... Aerolineas appears to have little if any contact with the State of New Jersey. Aerolineas "does not operate and has never operated any flights from New Jersey."... Aerolineas states it is a foreign corporation existing under the laws of Argentina with its principal place of business in Argentina... Plaintiffs have done little to carry their burden of showing the court's general jurisdiction over Aerolineas. The only contact they allege to exist between Aerolineas and New Jersey is Aerolineas' sale of the tickets which were issued in New York, to the Plaintiff through Monica's Travel in Newark, New Jersey.
[Romero v. Aerolineas, 834 F.Supp. at 680.]
Thereafter, the court concluded that "[a]n out of state carrier's sale of tickets through a travel agent located in New Jersey is, by itself, insufficient to establish general jurisdiction over the carrier in New Jersey." 834 F.Supp. at 681. In addition the court stated "plaintiffs do not indicate Aerolineas has or ever had any contacts with this forum beyond the single sale of tickets issued in New York and delivered through a travel agent in the forum [New Jersey]. Under these circumstances, plaintiffs have not shown that Aerolineas maintains, or ever maintained, such continuous and systematic contacts with New Jersey as to establish general jurisdiction in this court." Id.
However, in the present matter, plaintiff counters the factual scenario in Romero that defendant has sufficient minimum contacts to establish personal jurisdiction in New Jersey. Specifically, plaintiff's attorney, Mr. John F. Wilson, supplied an affidavit to the court. Mr. Wilson stated that Aerolineas has at least two special agents who issue tickets in New Jersey. The identity of the two travel agencies was discovered by calling the 800 number listed in the Burlington/Gloucester/Camden County Donnelly Directory. In addition, Mr. Wilson alleges that he used the "Alta Vista" search on the internet to discover that Defendant, Aerolineas has a joint venture with Hertz Rent-A-Car, including New Jersey locations, in which customers of Hertz earn flying points on Aerolineas. Mr. Wilson further claims that Aerolineas has a similar joint venture with Hertz Rent-a-Car. Both of these relationships are advertised in the "Alta Vista" website. Mr. Wilson asserts that defendant has its own web page on the internet ("www.aerolineas.com .ar/english/html/cargo.htm") and that defendant advertises on its web page that "it can deliver cargo anywhere in the country"
Before analyzing the quantity or quality of defendant's contacts with New Jersey, the court must look at personal jurisdiction under New Jersey law. In Romero v. Aerolineas Argentinas, 834 F.Supp. 673 (D.N.J. 1993), supra, the court outlined the relevant New Jersey law:
The New Jersey Long Arm Rule, permits the exercise of in personam jurisdiction as far as it constitutionally permissible under Due Process of the Fourteenth Amendment....
Under the Fourteenth Amendment, personal jurisdiction exists where the plaintiff demonstrates the defendant has sufficient `minimum contacts' with the forum state.... The courts of New Jersey have exercised in personam jurisdiction wherever possible ... if the facts reasonably support the presence of the flexible concepts of `fair play and substantial justice.'
The plaintiff bears the burden of demonstrating that the defendant's contacts with New Jersey are sufficient to give the court in personam jurisdiction....
These contacts must have a basis in `some act by which Defendant purposefully avails itself of the privilege of conducting *994 activities within the forum State, thus invoking the benefits and protection of its laws.....'
The `purposeful availments' requirement ensures that a Defendant will not be haled into a jurisdiction solely as a result of `random', `fortuitous', or `attenuated' contacts, or of the `unilateral activity of another person.'

[Id. at 678-680.]
In applying the above cited law to the present case, the court must analyze the defendant's contacts with New Jersey and especially those contacts located on or through the world wide Internet.
The only contact Defendant has with New Jersey is the limited 800 number in the phone book and the travel agents within the state who can obtain tickets on the defendant's airlines for New Jersey residents. This court believes the issue turns on whether defendant Aerolineas' Internet web page, combined with the 800 number advertisement, constitutes sufficient contacts with New Jersey to exercise personal jurisdiction over them. Since New Jersey does not have any case law directly on point relative to the Internet, the court was forced to review federal case law which examined advertisements on the Internet.
The court examined the following cases:
1. Inset Systems, Inc. v. Instruction Set, Inc., 937 F.Supp. 161 (1996)
2. Maritz, Inc. v. Cypergold [Cybergold], Inc., 947 F.Supp. 1328 (1996)
3. The Hearst Corp. v. Goldberger, 1997 WL 97097 (S.D.N.Y.)
4. Blumenthal v. Drudge, 992 F.Supp. 44 (1998)
The federal courts in Blumenthal and Hearst were hesitant to find personal jurisdiction over the defendants merely due to an internet web page available to residents of the forum states.
The Blumenthal case explained the difference between active and passive internet sites and the resulting legal consequences based on the type of web. The court stated:
Generally, the debate over jurisdiction in cyberspace has revolved around two issues: passive web sites versus interactive web sites, and whether a defendant's Internet-related contacts with the forum combined with other non-Internet related contacts are sufficient to establish a persistent course of conduct. As one court has explained:
At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

[Blumenthal 992 F.Supp. at 55.]
Further Judge Friedman noted in Blumenthal, "the exercise of personal jurisdiction is contingent upon the web site involving more than just the maintenance of a home page; it must also allow browsers to interact directly with the web site on some level. In addition, there must also be some other non-Internet related contacts between the defendant and the forum state in order for the court to exercise personal jurisdiction." Id. at 56
In Hearst v. Goldberger, supra. Magistrate Peck, after describing the Internet, stated that to allow personal jurisdiction based on an Internet web site would be "tantamount to a declaration that this court, and every other court throughout the world may assert personal jurisdiction over all information *995 provided on the global World Wide Web." 1997 WL 97097 at *19 (S.D.N.Y.). He felt this went too far and would thereby create a national jurisdiction allowing all plaintiffs to sue in their home court (this parenthetically would give every plaintiff the home court advantage in every suit).
In contrast, in Maritz and Inset Systems, supra. both 1996 cases, the courts allowed for personal jurisdiction. In Maritz, supra. the plaintiff brought an action against an operator of an internet site for trademark infringement. The operator moved to dismiss asserting lack of personal jurisdiction in the State of Missouri. The court stated "it is unnecessary to decide whether defendant's activities satisfy the transportation of any business test" because the defendant was amenable to service under the "commission of a tortious act" provision of Missouri's long-arm statute. Judge Wehler went on to note:
Although CyberGold characterized its activities as merely maintaining a "passive website," its intent is to reach all internet users, regardless of geographic location. Defendant's characterization of its activity as passive is not completely accurate. By analogy, if a Missouri resident would mail a letter to CyberGold in California requesting information from CyberGold regarding it service, CyberGold would have the option as to whether to mail information to the Missouri resident and would have to take some active measures to respond to the mail. With CyberGold's website, CyberGold automatically and indiscriminately responds to each and every internet user who accesses its website. Through its website, CyberGold has consciously decided to transmit advertising information to all internet users, knowing that such information will be transmitted globally.....
Similarly, the Court concludes that defendant CyberGold, through its internet activities, has purposefully availed itself of the privilege of doing business with this forum such that it could reasonably anticipate the possibility of being haled into court here.

[947 F.Supp. at 1333 and 1334]
The Inset case also involved a trademark infringement action. Specifically, a Connecticut corporation brought a trademark infringement action against a Massachusetts corporation that allegedly used its trademark as its Internet domain name. Specifically, the plaintiff, Inset, filed for registration as the owner of the federal trademark INSET. Thereafter, the Defendant obtained "Inset.Com." as its Internet domain address. The Defendant also maintained the telephone number "1-800-IS-Inset" to further advertise its goods and services.
The court concluded that:
In the present case, [defendant] has directed its advertising activities via the Internet and its toll-free number toward not only the state of Connecticut, but to all states. The Internet as well as toll-free numbers are designed to communicate with people and their businesses in every state. Advertisement on the Internet can reach as many as 10,000 Internet users within Connecticut alone. Further, once posted on the Internet, unlike television and radio advertising, the advertisement is available continuously to any Internet user, [defendant] has therefore, purposefully availed itself of the privilege of doing business within Connecticut.

[937 F.Supp. at 164]
The court went on to state that advertising via the Internet satisfied the Connecticut long-arm statute.
This court must look at Arolineas' internet contacts in the present case. The Court notes that Alta Vista is a source to forward users to primary information. It can be compared to an index which directs a reader to other places on the internet. This Court was not provided with any information about how the Alta Vista listings takes place, who places it, who initiates it or how it obtains information to place on their web site. The court took it upon itself to personally examine the Alta Vista web page. When forwarded to the particular web page for Aerolineas Argentinas, (www.aerolineas.com.ar/english/html/cargo.htm) there was no direct solicitation for services to New Jersey residences. The web mainly described the history of the airline company *996 and provided information for cargo transportation. There was no information aimed specifically at New Jersey or its residents nor any interactive site to book airline tickets in the United States. Moreover, many of Aerolineas' web pages are in Spanish. After examining the website, it is clear that defendant's pages must be classified as passive web pages. As described in the federal case of Blumenthal, "[a] passive website does little more than make information available to those who are interested in it ... and is not grounds for the exercise [of] personal jurisdiction." Blumenthal, 992 F.Supp. at 55.
Accordingly, this court concludes that a review of the Aerolineas web site and the information contained therein does not indicate that the defendant purposely availed itself to New Jersey through its internet site. Further, defendant's 1-800 number advertised in the directory, along with the passive Internet web site, is not enough to exercise personal jurisdiction over defendant. Thus, there is no jurisdiction to bring this suit against defendant, Aerolineas Argentinas in New Jersey. Consequently, defendant's motion to dismiss for lack of personal jurisdiction is granted as to defendant, Aerolineas Argentinas only.